# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

THOMAS HENDERSON,

                Defendant.

Case No. 13-CR-17-JPS

ORDER

1.     BACKGROUND

The superseding indictment in this case charges defendant Thomas Henderson ("Henderson") with a series of nine convenience store robberies (six of which are charged as armed robberies) occurring in this district from October 2012 through January 2013. (Docket #56). Henderson moves to suppress inculpatory statements he provided to authorities while under arrest for the robberies. (Docket #s 51 and 80).[1] Suppression is merited, Henderson argues, because his inculpatory statements are the tainted fruits of a Fourth Amendment violation: warrantless arrest without probable cause.

Magistrate Judge Patricia Gorence conducted an evidentiary hearing on Henderson's suppression motion (Docket #88) and recommends that the motion be denied (the "Recommendation"). (Docket #106).

Henderson objects to the Recommendation's central finding – probable cause existed for the warrantless arrest – as well as certain subsidiary factual findings. (Docket #107); *See generally*, 28 U.S.C. § 636(b)(1)(C). These objections are addressed below.

---

[1] In the course of his suppression briefing, Henderson abandoned his attempt to suppress *physical* evidence obtained by authorities. (Docket #96, 1-2 and 11).

2.  STANDARD OF REVIEW

The Court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

3.  ANALYSIS

   3.1  Overview

Henderson does not take issue with the Recommendation's statements of law (Docket #107, 2) but rather submits an over-arching attack on its central finding—probable cause existed for Henderson's warrantless arrest ("Probable Cause Finding")—by arguing that the totality of the circumstances known to law enforcement at the time of Henderson's arrest, viewed in a common sense manner, did not reveal a substantial chance of his criminal involvement in any of the nine robberies. (Docket #107); *see U.S. v. Sawyer*, 224 F.3d 675, 678-680 (7th Cir. 2000). To reach this conclusion, Henderson asks the Court to analyze the evidence in a piecemeal fashion, (Docket #107, 3-7), notwithstanding his acknowledgment elsewhere that the governing standard is one of "the totality of the circumstances" (*Id.* at 2). In light of the governing standard, Henderson's tactic is unavailing.

Sprinkled amid Henderson's attempts to disaggregate the evidence are objections to particular factual findings. These objections are addressed below.

   3.2  Henderson's Whereabouts on January 4, 2013

Henderson objects to the Recommendation's finding that "Amanda [Holewinski (the girlfriend of one of Henderson's co-defendants)] told officers that she believed [her boyfriend] *and the defendant* had taken the car [involved in the robbery on January 4, 2013 ("January Robbery")]." (Docket #106, 12 (emphasis added)). Alas, the Court finds, based on an independent

review of the evidentiary hearing transcript, that officer testimony yields a number of propositions: when interviewed during the immediate aftermath of the January Robbery, Ms. Holewinski told investigating officers that: (i) her car (the suspected getaway vehicle) was missing; (ii) *both* her boyfriend *and Henderson* were missing as well (Docket #88, page 52, lines 16-20); and (iii) she was unsure who took her car, "but that [her boyfriend] often takes the car and drives it." (Docket #88, page 53, lines 3-5). Therefore, the Court is obliged to conclude that Henderson's objection rightly elucidates a fine factual distinction.[2]

    3.3    Similar Clothing

In addition, Henderson objects to the Recommendation's implication that he changed out of clothing matching a suspect's description in the immediate aftermath of the January Robbery. (Docket #107, 5). This implication arises from the Recommendation's dual findings that: (i) "[o]ne suspect [in the January Robbery] wore a gray hooded sweatshirt" according to "victims and witnesses" (Docket #106, 5); and (ii) Ms. Holewinski told Milwaukee Police Detective Walter Cappelli that she saw Henderson "wearing a gray sweatshirt" approximately thirty minutes after the January Robbery was reported to police (*Id.*, 6) (together, the "Dual Findings"). Henderson submits that Ms. Holewinski was not consistent: she told another officer the sweatshirt was "blue" (Docket #107, 5-6). These varying color descriptions (gray and blue), in Henderson's view, contrast sharply with a reference in "robbery dispatch tapes" to "'blk hoodies'" (*Id.*, 5). However, the Court finds that Henderson ignores salient context: the January Robbery was

---

[2] However, having clarified the record, the Court ultimately determines that these nuances do not materially affect the totality of the circumstances. *See* Section 3.5.

reported at 7:05 *in the evening*. (Docket #106, 4). Therefore, it is entirely plausible that victim(s) of the January Robbery (or whomever spoke with the police dispatcher) could mistake the colors grey or blue for the color black if the suspect's sweatshirt was viewed against the backdrop of darkness as the suspects fled the scene.[3] Moreover, Henderson ignores the fact that an officer at Magistrate Gorence's evidentiary hearing testified that, upon interviewing the convenience store owner in the immediate aftermath of the January Robbery, he was told that one of the suspects was wearing a "gray hooded sweatshirt[.]" (Docket #88, page 35, line 11).

For the reasons set forth above, the Dual Findings, as supplemented by the foregoing analysis, will be adopted by the Court.

### 3.4  Western Michigan Apparel

Henderson does not appear to contest that surveillance videos capturing certain of the alleged robberies reveal "a dark 'Western Michigan' sweatshirt" worn by one of the suspects[4] (Docket #106, 4), however Henderson appears to object to the Recommendation's finding that "officers observed a dark-colored 'Western Michigan' sweatshirt in a pile of clothes on the floor" of Henderson's bedroom while interviewing Ms. Holewinski following (and on the same evening as) the January Robbery (the "Western Michigan Finding") (Docket #106, 6). (Docket #107, 7). Based on an independent review of the evidentiary hearing transcript, the Court finds that both Detective Cappelli and Milwaukee Police Officer Patrick Fuhrman

---

[3] The Court takes judicial notice of the fact that, at 7:05 p.m. in the evening in the month of January in the State of Wisconsin, the sun has long-past set.

[4] Rather than dispute what the videos themselves do or do not reveal, Henderson argues that law enforcement officials lack credibility because they did not memorialize in writing this particular observation derived from their viewing(s) of the videos. (Docket #107, 7).

provided first-hand testimony to substantiate the Western Michigan Finding. (Docket #88, page 60, lines 14-19 and page 130, lines 3-13). Rather, Henderson questions the credibility of this testimony because Detective Cappelli neglected to memorialize his finding in his contemporaneous report. (Docket #88, page 61, lines 17-24). Asked to explain his omission, the detective testified: "I didn't put it in my report because I knew we were going to execute a search warrant and that property would be listed on the search warrant when it was executed." (Docket #88, page 62, lines 8-10). This explanation is corroborated by both: (i) the search warrant dated January 5, 2013, signed by Kevin M. Costello, Circuit Court Judge of the First Judicial District of Wisconsin, which lists among the objects of search a "Black sweatshirt or tee shirt with 'Western Michigan' on front" (Govn't Exhibit 3, page 1); and (ii) the affidavit of Milwaukee Police Detective David Anderson (attached to the search warrant) which avers that Officer Fuhrman "observed a shirt with the words 'Western Michigan'" amid the possessions in Henderson's bedroom when he conducted a "protective sweep" of the residence on the night of the January Robbery (Govn't Exhibit 3, Anderson Affidavit, ¶38).

In light of this corroborating evidence and, more generally, viewed against the totality of the record before it, the Court finds the relevant testimony credible and therefore adopts the Western Michigan Finding.

### 3.5 Conclusion

Subject to the factual emendation identified in Section 3.2 and supplemental analysis set forth above in Section 3.3, the Court adopts the Recommendation's factual findings (collectively, the "Enhanced Facts") based upon its own independent examination of the record.

Affording no deference to the Recommendation's Probable Cause Finding, the Court, based on its own independent analysis, finds that the Enhanced Facts, viewed together in their totality and in a common sense manner, revealed to law enforcement at the time of Henderson's arrest a substantial chance that Henderson was involved criminally in at least one of the nine robberies for which he is charged. The Recommendation's thorough and thoughtful analysis in this regard—to the extent not inconsistent with the Enhanced Facts—will be adopted. Therefore, in light of the teachings of *Sawyer*, the Court independently concurs in the Recommendation's Probable Cause Finding and so is obliged to and will deny Henderson's motion to suppress.

Accordingly,

IT IS ORDERED that Magistrate Judge Patricia Gorence's Recommendation dated June 18, 2013 (Docket #106) be and the same is hereby ADOPTED subject to the emendation and supplementation identified in the foregoing analysis; and

IT IS FURTHER ORDERED that the defendant's Motion to Suppress (Docket #s 51 and 80) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 30th day of July, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge